## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2393 | **DATE** | 5/20/2003 |
| **CASE TITLE** | Trepanier, et al. vs. Ryan, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order. Defendants' motion to dismiss [38-1] is granted in part and denied in part. Further, as explained in the accompanying order, the parties are directed to submit additional briefs addressing whether plaintiffs have standing under EPCRA to bring suit to for an injunction ordering the development of a local emergency response plan. Defendants shall file the opening brief by June 10, 2003; plaintiffs' response is due July 1, 2003, and defendants' reply is due July 11, 2003. Finally, plaintiff's motion to strike certain paragraphs of defendants' response to plaintiffs' reply brief [55-1] is denied without prejudice in accordance with Local Rule 78.2 for failure to comply with Local Rule 5.3(b). N.D. Ill. L. R. 5.3 and 78.2.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | **Document Number** |
| | Notices mailed by judge's staff. | | MAY 2 1 2003 | | |
| | Notified counsel by telephone. | | date docketed | | |
| ✓ | Docketing to mail notices. | ED-7 FILED FOR DOCKETING | | | 56 |
| | Mail AO 450 form. | 03 MAY 20 PM 2: 08 | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | date mailed notice | | |
| | courtroom deputy's initials | CLERK U.S. DISTRICT COURT Date/time received in central Clerk's Office | | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

LIONEL P. TREPANIER,      )
                                 )
               Plaintiff,     )     No. 00 C 2393
      v.                          )
                                 )
GEORGE RYAN, officially, as Governor     )     Judge Joan B. Gottschall
of Illinois, et al.,                     )
                                 )
               Defendants.    )

## MEMORANDUM OPINION & ORDER

In the six count Third Amended Complaint ("TAC"), plaintiffs Lionel Trepanier, Kurt

Leslie, Sheila Mulvey-Tatoris, The South Metro Greens ("SMG"), and The Chicago

Greens/Green Party USA ("CG") have sued defendants George Ryan, in his official capacity as

Governor of Illinois ("the Governor"),[1] Michael Chamness, individually and in his capacity as

director of the Illinois Emergency Management Agency ("IEMA") and chair of Illinois' State

Emergency Response Commission ("SERC"), and Julia Gentile,[2] individually and in her capacity

as chief legal counsel to the Illinois SERC and IEMA, practicing director of the Illinois SERC,

and manager of Hazardous Materials Compliance & Enforcement of the IEMA. In Count I, all

plaintiffs sue the Governor, Chamness and Gentile in their official capacities[3] for allegedly

violating the federal Emergency Planning and Community Right-to-Know Act ("EPCRA"). In

Counts II-VI, each plaintiff brings an individual claim against Chamness and Gentile, in their

---

[1]George Ryan is no longer Governor of Illinois. No substitution of parties is necessary,
however, because the Governor is being dismissed from the case, as explained within.

[2]Plaintiffs actually sued Julie Gentile; defendant's name is Julia Gentile.

[3]In their response to defendants' motion to dismiss, plaintiffs clarified that Count I is
brought against defendants in their official capacities only.

individual and official capacities, for alleged violations of plaintiffs' First Amendment right to free speech and/or free association.[4] Defendants have moved to dismiss the complaint on multiple grounds, including that plaintiffs lack standing, fail to state a claim, and are barred by Eleventh Amendment. For the reasons explained below, defendants' motion to dismiss is granted in part and denied in part.

## Background on EPCRA

EPCRA "was enacted as independent legislation within the Comprehensive Environmental Response Compensation and Liability Act." *United States v. Murphy Oil, USA, Inc.*, 143 F.Supp. 2d 1054, 1063 (W.D. Wisc. 2001). "EPCRA establishes a framework of state, regional, and local agencies designed to inform the public about the presence of hazardous and toxic chemicals, and to provide for emergency response in the event of health-threatening release." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 86 (1998). Under EPCRA, the governor of each state had to appoint a SERC by April 1987. 42 U.S.C. § 11001(a). Each SERC, in turn, had a specified amount of time to designate emergency planning districts and appoint members to a local emergency planning committee ("LEPC") for each such district. *Id.* at § 11001(b-c). Each LEPC was required to prepare an emergency response plan no later than October 14, 1988, and had to submit the plan to the SERC for its review and recommendations for revisions. *Id.* at § 110003(a), (e). Under EPCRA, information regarding emergency response plans must be made publicly available. The SERC must "establish procedures for receiving and processing requests from the public for information . . . ." *Id.* at § 11001(a). Further, 42 U.S.C.

---

[4]The First Amendment is applicable to the States through the Fourteenth Amendment. *Virginia v. Black*, 123 S. Ct. 1536, 1547 (2003).

§ 11044(a) states: "Each emergency response plan, material safety data sheet, . . . toxic chemical release form, and followup emergency notice shall be made available to the general public . . . during normal working hours at the location or locations designated by the Administrator, Governor, [SERC], or [LEPC], as appropriate." EPCRA authorizes citizens to bring civil actions against the Governor or the SERC "for failure to provide a mechanism for public availability of information in accordance with section 11044(a) . . . ." *Id.* at § 11046(a)(1)(C).

<u>Analysis</u>

The standard governing a motion to dismiss is well-established. A motion to dismiss tests only the sufficiency of the complaint, not the merits of the claims. *Triad Assoc., Inc. v. Chicago Housing Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). Accordingly, the court must accept as true all of the allegations in the complaint, and must construe the allegations in the light most favorable to the plaintiff. *Bontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993). A complaint may be dismissed only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

A.    <u>Motion to Dismiss Count I</u>

In Count I, plaintiffs allege that Chamness and Gentile, as chair and director of the Illinois SERC, respectively, and the Governor violated EPCRA by failing to provide a mechanism to make information regarding Cook County's emergency response plan publicly available. This allegation is intertwined with plaintiffs' claims that (1) although the Cook County Local Emergency Planning Committee ("Cook County LEPC") should have created an emergency response plan for Cook County years ago, no emergency response plan has yet been

3

created, and (2) the Illinois SERC failed to adequately supervise the Cook County LEPC to ensure that an emergency response plan was established. Essentially, then, plaintiffs claim there was neither a mechanism to make information publicly available nor was there an emergency response plan to make publicly available.

Defendants argue that Count I should be dismissed for failure to state a claim. The court disagrees. Plaintiffs allege that Trepanier, on behalf of SMG, CG and himself, attempted to obtain the emergency response plan for Cook County, was repeatedly denied access to information regarding that plan, and that defendants failed to provide a mechanism to make information regarding that plan publicly available. These allegations are sufficient to satisfy the standards of federal notice pleading and state a claim. Moreover, EPCRA clearly authorizes a citizen suit against both the Governor and the Illinois SERC (or its officials) for such an alleged violation. *See* 42 U.S.C. § 11046(a)(1)(C).

Count I does not end there, however. Plaintiffs seek not only a mechanism for making information publicly available, but also an injunction ordering defendants to develop a local emergency response plan for Cook County. Defendants counter that the "statutory responsibility for [emergency response] plan creation and development lies with the LEPC and not the SERC [or, presumably, the Governor]." (Defs.' Mem. Supp. Mot. Dismiss at 14.) Therefore, according to defendants, the Governor and Illinois SERC (or its officials) cannot be liable for the Cook County LEPC's failure to establish an emergency response plan. That conclusion does not follow. EPCRA mandates that each state governor shall appoint a SERC, the SERC shall appoint LEPCs, and the SERC "shall supervise and coordinate the activities of [its LEPCs]." 42 U.S.C. § 11001(a). EPCRA also expressly requires each LEPC to "complete preparation of an

4

emergency response plan . . . ." 42 U.S.C. § 11003(a). Defendants offer no reasoned basis for the court to find that the Governor and the Illinois SERC officials cannot be liable for the Cook County LEPC's alleged failure to develop an emergency response plan. Indeed, if an LEPC fails to prepare an emergency response plan, the court sees no reason why the entity tasked with supervising and coordinating the LEPC's activities should not be held accountable.

It is not evident to the court, however, that plaintiffs have standing to bring a citizen action under EPCRA to force the creation of an emergency response plan. *Compare* 42 U.S.C. § 11046(a)(1) (expressly delineating grounds for citizen suits) *with* § 11046(g) ("[n]othing in this section shall restrict or expand any right which a person may have . . . to seek enforcement of any requirement . . ."). Although defendants did not raise this issue, the court must do so because standing is a threshold jurisdictional requirement. *See Perry v. Sheahan*, 222 F.3d 309, 313 (7th Cir. 2000). The parties are therefore directed to submit additional briefs addressing whether plaintiffs have standing under EPCRA to seek an injunction ordering the development of a local emergency response plan.

Because plaintiffs have standing for at least some of the claims raised in Count I, the court will address defendants' alternative argument for dismissal. Defendants assert that Count I should be dismissed as to the Governor and Gentile because it would be redundant to permit the claim to proceed against all three defendants. Official-capacity claims are effectively claims against the relevant governmental entity. *See Smith v. Metro. Sch. Dist. Perry Township*, 128 F.3d 1014, 1021 n.3 (7th Cir. 1997). Thus, official-capacity claims may be redundant with claims against the relevant governmental entity. *Id.* Here, plaintiffs have sued only the officials, however, not the governmental entity (*e.g.* the State of Illinois or the Illinois SERC). Naming all

5

three defendants in their official capacities in Count I was proper. *See* 42 U.S.C. § 11046(a)(1)(C). Nevertheless, in the event injunctive relief is ordered, it will likely be directed against the Illinois SERC officials, rather than the Governor. *See Id.* at § 11001 (designating the SERC to establish procedures for receiving and processing information requests from the public). Thus, although § 11046(a)(1) authorizes suit against a state's governor or its SERC, under the circumstances presented it is not necessary for plaintiffs to sue both in order to obtain the relief sought. The court agrees that it would be redundant for Count I to proceed against both the Governor and the Illinois SERC officials, and therefore dismisses the Governor from Count I. (*See* Order of July 26, 2001 at 8-9.) Gentile, however, remains a defendant as an official of the Illinois SERC.

**B.    The Effect of the Eleventh Amendment on Counts II-VI**

Defendants Chamness and Gentile[5] argue that the Eleventh Amendment bars plaintiffs from bringing Counts II-VI (plaintiffs' individual claims) against them in their official capacities. The Eleventh Amendment, subject to certain limited exceptions, "divest[s] federal courts of subject matter jurisdiction over suits brought by private parties against a state . . . ." *Marie O. v. Edgar*, 131 F.3d 610, 615 (7th Cir. 1997). According to both the Supreme Court and the Seventh Circuit, "the Eleventh Amendment bars an action in federal court against a state, its agencies, or its officials in their official capacity." *Gossmeyer v. McDonald*, 128 F.3d 481, 487 (7th Cir. 1997) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-02 (1984) and various Seventh Circuit cases). Plaintiffs, however, counter that their claims fall within an exception to this constitutional bar which allows "suits against state officials seeking prospective

---

[5]With respect to Counts II-VI, "defendants" refers only to Chamness and Gentile.

6

equitable relief for ongoing violations of federal law . . . ."[6] *Marie O.*, 131 F.3d at 615. The court agrees that the exception applies here. Counts II through VI may proceed against Chamness and Gentile in their official capacities solely to the extent plaintiffs seek prospective equitable relief in those counts.[7]

## C.    Motion to Dismiss Count II

Defendants also urge the court to dismiss Count II, Trepanier's claim that Chamness and Gentile retaliated against him in violation of his First Amendment rights. Specifically, Trepanier alleges that after he initiated this lawsuit on or about April 19, 2000, Chamness and Gentile "removed him from the Cook County LEPC and denied him the EPCRA training they were providing to LEPC members." (TAC at ¶ 60.) Defendants argue that dismissal is warranted because Trepanier lacks standing and fails to state a claim. Defendants further claim that they are protected from the claim by qualified immunity.

As a threshold matter, Trepanier has standing to bring this claim. Defendants claim that in the TAC, Trepanier admits that he was never appointed to the Cook County LEPC, and thus, he could not have been removed from the committee in violation of his constitutional rights. Whether Trepanier was appointed to the LEPC then removed or whether he was never formally appointed is not dispositive. If Chamness and/or Gentile removed Trepanier from, or refused to

---

[6]The two other exceptions allow an individual to sue a state if Congress has validly and unequivocally abrogated the state's immunity, or if a state has waived its immunity and consented to proceed in federal court. *Marie O*, 131 F.3d at 615. Plaintiffs do not contend that either of these exceptions apply.

[7]In each of those counts, plaintiffs seek not only injunctive and declaratory relief, but also what they label as "costs" and punitive damages. Those costs, however, include compensatory damages. Plaintiffs may not sue Chamness and Gentile in their official capacities for either compensatory or punitive damages.

appoint him to, the committee for having filed this lawsuit, that may qualify as retaliation in violation of the First Amendment.

Defendants' argument that Count II fails to state a claim is similarly misplaced. Trepanier does not claim that he had a constitutional right to serve on the Cook County LEPC—he claims that he was removed from the committee in retaliation for exercising his First Amendment rights. As the court previously explained, "The viability of a retaliation claim does not hinge on whether the plaintiff has a property right in the interest or benefit that has been taken away from him as retaliation for his speech. Rather, the key question is whether defendants have committed '[a]ny deprivation under color of law that is likely to deter the exercise of free speech . . . .'" (Order of July 26, 2001 at 8) (internal citations omitted). "[I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper." *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987) (citations and internal quotation marks omitted). As explained above, it makes no difference whether defendants removed Trepanier from the LEPC or refused to appoint him. Nor does it matter that the SERC has authority to "revise its designations and appointments . . . as it deems appropriate." 42 U.S.C. § 11001(d). If Chamness and/or Gentile based their decisions on improper grounds—*i.e.*, they removed or refused to appoint Trepanier because he filed this lawsuit—they may be liable for retaliation in violation of the First Amendment.

Defendants also contend that Gentile could not have retaliated against Trepanier because she was not a defendant in the original complaint, and (alternatively) that Trepanier has failed to allege why Gentile would retaliate, given that she was not a defendant originally. Both

8

arguments fail. The fact that Gentile was not an original defendant does not mean that she could not, as a matter of law, have acted in retaliation; defendants offer no cases supporting such a conclusion, nor is there any reasoned basis for reaching that result. As for the latter argument, defendants should keep in mind that federal court requires only notice pleading. *See* Fed. R. Civ. P. 8(a). Trepanier need not allege facts regarding Gentile's motive in order to state a claim.

Nor will the court dismiss Count II based on qualified immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (internal citations omitted). The issue of qualified immunity is analyzed under a two-prong test. The first question is whether the facts alleged, viewed in the light most favorable to the plaintiff, show that defendant's conduct violated a constitutional right. If the answer is no, the inquiry ends. If the answer is yes, the second question is whether the constitutional right at issue was clearly established. *Id.* at 201-202. Whether a right is clearly established is a question of law, *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985), that must be determined "in light of the specific context of the case." *Saucier*, 533 U.S. at 202. That does not mean, however, that there must be a prior case directly on point. *Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001). Rather, "'[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Marshall v. Allen*, 984 F.2d 787, 794 (7th Cir. 1993) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Further, although immunity issues should be decided

early in the litigation, *Saucier*, 533 U.S. at 201, dismissal under Rule 12(b)(6) on the basis of qualified immunity is rarely warranted.[8] *Alvarado*, 267 F.3d at 651.

Here, accepting the allegations in the complaint as true, there is no basis to grant defendants the protection of qualified immunity. Trepanier alleges that defendants retaliated against him for filing a lawsuit. It is clearly established that "[r]etaliation for filing a lawsuit is prohibited by the First Amendment's protection of free speech . . . ." *Zorzi v. County of Putnam*, 30 F.2d 885, 896 (7th Cir. 1994). Thus, if Trepanier, as a public employee, filed a lawsuit involving a matter of public concern[9] and defendants retaliated against him for doing so, they may well be liable for violating a clearly established First Amendment right.[10] *See id.*

Defendants' motion to dismiss is therefore denied with respect to Count II.

## D.   Motion to Dismiss Count III

In Count III, Leslie alleges that Chamness and Gentile violated his First Amendment rights to freely associate with the Green Party and retaliated against him for exercising his free

---

[8]Dismissal would be appropriate if, from the face of the complaint, it was evident that plaintiff had no claim for a constitutional violation, or that the constitutional right at issue was not clearly established at the time of the alleged violation. But in many cases, whether qualified immunity is available depends on the specific facts of the case at bar. *Jacobs v. City of Chicago*, 215 F.3d 758, 765 n.3 (7th Cir. 2000). And "the plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity." *Alvarado*, 267 F.3d at 651.

[9]For purposes of ruling on the motion to dismiss, accepting the allegations in the Complaint as true, there is adequate support to find that Trepanier's suit involves matters of public concern. Indeed, given that the suit seeks an injunction to force the SERC to make information publicly available regarding plans for emergency response to environmental hazards, the Complaint strikes the court as inherently relating to a matter of public concern.

[10]Whether they would in fact be liable would depend on the outcome of the *Connick/Pickering* balancing test.

speech rights. Defendants seek dismissal of this count on the grounds that Leslie lacks standing and fails to state a claim.

Leslie's claim has two subparts. Leslie first alleges that when he sought appointment to the Cook County LEPC after Trepanier commenced this lawsuit, he was asked two questions: "Are you a part of the Greens?" and "Are you a part of the lawsuit?" (TAC at ¶ 84.) These questions, according to Leslie, interfered with his First Amendment right to freely associate with the Green Party, caused him not to identify himself as a member of the Green Party, and illegally conditioned his ability to participate in the Cook County LEPC "on the premise that he would not claim membership in the Green Party." (*Id.* at 87.)

Second, Leslie alleges that after he was appointed to the Cook County LEPC, he was elected chairman on April 18, 2002. As chair, he requested copies of the prior records of the Cook County LEPC from defendants. Despite repeated requests, defendants failed to respond, and without those records, Leslie claims that his committee cannot perform its legal duties. According to Leslie, this is a retaliation claim. He argues that these events occurred after he joined the litigation, and that defendants' refusal to respond to his requests, as chair, was retaliation for his exercising his right to freedom of speech, *i.e.*, to file a lawsuit.

Leslie's "retaliation" claim must be dismissed. First, the allegations in the complaint fail to put defendants on notice of the claim Leslie contends he has raised. Notice pleading requires a plaintiff to give a defendant fair notice of the claim against him and the grounds upon which it rests, *i.e.*, it must contain "enough to 'allow the court and the defendant to understand the gravamen of plaintiff's complaint.'" *McCormick v. City of Chicago*, 230 F. 3d 319, 323-24 (7th Cir. 2000) (citations omitted). Nowhere in the complaint does Leslie allege any facts regarding

joining the lawsuit. Thus, from the face of the complaint, it is impossible to discern that Leslie is

claiming that defendants retaliated against him for joining the lawsuit. Although the court must

make all reasonable inferences in favor of the plaintiff, such an inference is not reasonable here.[11]

For that reason alone, dismissal is appropriate.

But there is more. The injury Leslie alleges is that defendants have failed to turn over

records to him as chair of the Cook County LEPC, not in his individual capacity. This is clearly

a dispute between two state agencies, the Illinois SERC and the Cook County LEPC. The court

cannot fathom how Leslie could have standing to bring this claim individually rather than on

behalf of the agency he chairs. To the extent Count III raises a claim for retaliation in violation

of Leslie's First Amendment rights based on defendants' alleged failure to respond to Leslie's

requests for records, it is dismissed.

That leaves Leslie's first claim, which alleges that defendants' questions about his

political affiliation violated his rights to freely associate with the Green Party. Defendants'

assertion that Leslie lacks standing has no legal basis. Based on a flawed reading of *Polis v.*

*Getaways, Inc.*, No. 98 C 1808, 2001 WL 185481, at *1 (N.D. Ill. Feb. 26, 2001), they argue that

unless Leslie had standing at the time Trepanier filed the original complaint, he lacks standing. It

is true that Leslie had no claim at the time this lawsuit commenced. And it is true, as the court

stated in *Polis*, that "[s]tanding is indispensable and must exist when the complaint is filed . . . ."

*Id.* But that does not mean that to bring his claim in this action, *Leslie* had to have standing at

---

[11]A review of the docket shows that Leslie joined the litigation when the Second
Amended Complaint was filed on February 28, 2002. Notably, however, the docket shows that
the Second Amended Complaint was never served, and there is no allegation that defendants
were aware that Leslie joined the litigation before the Third Amended Complaint was filed in
August 2002—after the alleged retaliatory conduct commenced.

the time Trepanier instituted the litigation. Rather, it means that at the time the complaint was amended to add Leslie's claim, he had to have standing. Any other interpretation would lead to ridiculous results, such as requiring parties to bring any claims arising after the commencement of litigation in a separate lawsuit rather than filing an amended complaint in the pending action.

Further, unlike his retaliation claim, Leslie clearly puts Chamness and Gentile on notice of this claim: he asserts that when defendants asked him whether he was a member of the Green Party, they violated his First Amendment right of free association. "The First Amendment protects the right to associate with others 'in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.'" *Marshall v. Allen*, 984 F.2d 787, 799 (7th Cir. 1993) (quoting *Bd. of Dirs. of Rotary Int'l v. Rotary Club*, 481 U.S. 537, 548 (1987)). These pursuits warrant constitutional protection because "'[e]ffective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association . . . .'" *Id.* (quoting *NAACP v. Alabama*, 357 U.S. 449, 460 (1958)). Indeed, the Supreme Court has long held that "compelled disclosure of affiliation with groups engaged in advocacy may constitute an effective restraint on freedom of association" and "has recognized the vital relationship between freedom to associate and privacy in one's associations." *Gibson v. Florida Legislative Investigation Comm.*, 372 U.S. 539, 544 (1963) (internal quotation marks and ellipses omitted). "[S]tate action that effectively chills the freedom to associate is subject to 'the closest scrutiny.'" *Marshall*, 984 F. 2d at 799 (quoting *NAACP v. Alabama*, 357 U.S. at 460)). Given this precedent, it is without question that Leslie states an actionable claim.[12]

_____

[12]Defendants also argue for dismissal asserting that he has no damages because he was appointed to the Cook County LEPC and later elected chairman. Leslie, however, alleges that the questions chilled his ability to associate with the Green Party. The court accepts that

## E.    Motion to Dismiss Count IV

In Count IV, Mulvey-Tatoris alleges that because of her affiliation with SMG and the Green Party, Chamness and Gentile have refused to appoint her to the Cook County LEPC, and thus have violated her First Amendment right to freely associate with those parties. Defendants argue for dismissal of this count contending that Mulvey-Tatoris is barred by the statute of limitations and fails to state a claim, and that they are protected by qualified immunity. Defendants further claim that Mulvey-Tatoris lacks standing, but this argument merely rehashes their flawed interpretation of *Polis*, and thus is rejected.

Moreover, Mulvey-Tatoris' claim is not barred by the statute of limitations, despite defendants' convoluted argument to the contrary. The statute of limitations for § 1983 is two years. *Farrell v. McDonough*, 966 F.2d 279, 283 (7th Cir. 1992). According to defendants, who argue based on the statute of limitations applicable to Trepanier's claim, this means that plaintiffs "must set forth conduct of the Defendants[] which occurred on or after April 25, 1998 *and before April 25, 2000* [the date the litigation commenced]." (Defs.' Mem. Supp. Mot. Dismiss at 12) (emphasis added). This argument is premised on a fundamental misunderstanding regarding the purpose and effect of statutes of limitations. A statute of limitations sets a time limit for bringing a claim based on when the claim accrued. In Illinois, a § 1983 plaintiff has two years from the date her claim accrues to file a lawsuit. The running of the statute of limitations for Trepanier's claim has no bearing on when Mulvey-Tatoris' claim accrued, or when the statute of limitations expires. At the earliest, Mulvey-Tatoris' claim accrued in March 2002. She brought her claim less than six months later when plaintiffs filed the Third Amended Complaint, and thus has no

allegation as true at this stage of the proceedings.

statute of limitations problem.[13]

Further, Mulvey-Tatoris adequately states a claim for which relief can be granted. According to Mulvey-Tatoris, Chamness and Gentile have refused to appoint her to the Cook County LEPC "because of her direct affiliation with SMG and the Green Party," thus interfering with her First Amendment right to freely associate with those parties. (TAC at ¶ 115-16.) Assuming the truth of those allegations for purposes of this motion, as the court must, Mulvey-Tatoris states a claim. Although Mulvey-Tatoris has no constitutional right to serve on the Cook County LEPC, if defendants have refused to appoint her because of her political persuasion, she has an actionable § 1983 claim for violation of her First Amendment right to freedom of association. *See Bd. of County Comm'rs v. Umbehr*, 518 U.S. 668, 674 (1996) (even if person has no entitlement to benefit, government may not deny benefit to a person on a basis that infringes his constitutionally protected rights).

The court also rejects the qualified immunity argument at this stage of the proceedings. As discussed above, Mulvey-Tatoris adequately alleges a constitutional violation, thus satisfying the first prong of the qualified immunity analysis. Whether the constitutional right was clearly established at the time of the violation is thus the crucial issue. "[C]onditioning hiring decisions on political belief and association plainly constitutes an unconstitutional condition, unless the government has a vital interest in doing so." *Rutan v. Republican Party of Illinois*, 497 U.S. 62,

---

[13]Defendants evidently intended to make the same argument with respect to Count III, (*see* Defs.' Mem. Supp. Mot. Dismiss at 12), but they failed to address the issue in the argument section of their brief. Defendants should not expect the opposing party, let alone the court, to respond to positions that are buried in the brief with no argument. Regardless, even assuming the issue was properly raised, as with Count IV, there is no statute of limitations problem with Count III.

77 (1990). In other words, the decision to hire or fire a public employee cannot be made solely on the basis of political affiliation unless the hiring authority can establish "that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti v. Finkel*, 445 U.S. 507, 518 (1980). *Branti* and *Rutan* do not necessarily preclude qualified immunity here, however, because those decisions do not conclusively establish that "in light of the specific context of the case," *Saucier*, 533 U.S. at 202, the defendants were unreasonable in believing that they could refuse to appoint Mulvey-Tatoris because of her political affiliation. *See Pounds v. Griepenstroh*, 970 F.2d 338, 340 (7th Cir. 1992) (patronage dismissal case questioning whether plaintiff could show clearly established right absent a closely analogous decision). Nevertheless, given that neither party offered substantive analysis of qualified immunity as it relates to Mulvey-Tatoris, and given the Seventh Circuit's ruling that dismissal under 12(b)(6) is rarely appropriate, *Alvarado*, 267 F.3d at 651, the court is unable to conclude that under no circumstances could Mulvey-Tatoris show that the defendants are not entitled to immunity. In the event defendants raise this issue again, the court suggests that the parties develop their positions more fully, paying particular attention to their respective burdens of proof, *see Pounds*, 970 F.2d at 340 n.1.[14]

Defendants' motion to dismiss is denied as it relates to Count IV.

---

[14]The Seventh Circuit has stated that the plaintiff must offer "analogous cases that would have put defendants on notice that their acts were illegal" and, in response, defendants must prove "through prior decisions or otherwise, that they could reasonably have believed that their acts were constitutionally permissible, either because the plaintiff's right was not so clearly established that the unlawfulness of their acts was apparent, or because political allegiance actually was a job requirement in the particular case." *Pounds*, 970 F.2d at 340 n.2.

**F.     Motion to Dismiss Counts V and VI**

Defendants also seek to dismiss Counts V and VI, the claims brought by SMG and CG against Chamness and Gentile, in both their individual and official capacities. In those counts, SMG and CG allege that Chamness and Gentile retaliated against the organizations for exercising their rights to freedom of speech and violated their rights to freedom of association. Specifically, SMG and CG allege that defendants' retaliatory conduct began when defendants hid or concealed petitions to revise the Cook County LEPC's membership which the organizations submitted to the Illinois SERC in July 1997. SMG and CG further allege that, together with Trepanier, they filed a "Notice of Intent to Sue" the Illinois SERC on October 21, 1999, and that Chamness and Gentile subsequently retaliated against both organizations by removing Trepanier (one of their members) from the Cook County LEPC and subsequently questioning their members who applied to the Cook County LEPC about their membership in the Green Party. SMG also claims defendants retaliated by failing to act on Mulvey-Tatoris' applications to join the Cook County LEPC.[15] According to SMG and CG, defendants' allegedly retaliatory conduct violated their First Amendment rights to both freedom of speech and freedom of association. Chamness and Gentile argue for dismissal of Counts V and VI, contending that the groups' claims are not actionable.

Regarding the events in 1997, Chamness and Gentile argue that their predecessors had no duty under EPCRA to respond to the petitions.[16] SMG and CG do not contest that point, but

---

[15]Mulvey-Tatoris is a member of SMG, but not CG. Trepanier and Leslie are members of both organizations.

[16]Chamness and Gentile also argue that they were not involved with the Illinois SERC until 1998, and cannot be held individually liable for their predecessors allegedly retaliatory

17

contend that the July 1997 actions evidence the beginning of a pattern of retaliatory conduct. That may be, but given the two-year statute of limitations, SMG and CG are time-barred from raising claims relating to retaliatory conduct that occurred in 1997.[17] Although the statute of limitations is an affirmative defense, a claim may be dismissed if a matter of defense appears plainly on the face of the complaint. *Watt v. City of Highland Park*, No. 98 C 8123, 2001 WL 109152, at *3 (N.D. Ill. Sept. 13, 2001). To the extent that Counts V and VI relate to events that occurred in 1997, they are dismissed.

Regarding the remainder of Counts V and VI, defendants argue for dismissal on the grounds that there are no allegations explaining how a lawsuit filed by Trepanier could result in retaliation against SMG and CG. This apparent challenge to the organizations' standing lacks merit. First, defendants misconstrue the Complaint. SMG and CG alleged that defendants retaliated against them, through their members, after the organizations filed a Notice of Intent to Sue. This is not an indirect claim, based on their *member's* action of filing a lawsuit, but rather is a claim based directly on each *organization's* exercise of the right to freedom of speech, *i.e.*, filing a Notice of Intent to Sue.[18] Second, defendants offer no legal basis for the court to conclude that conduct directed at an organization's members cannot constitute retaliation against the organization.

---

conduct. This argument cannot be considered on a motion to dismiss because it assumes facts outside the pleadings, *i.e.*, that Chamness and Gentile were not involved in 1997. In ruling on a motion to dismiss, the court may consider only the allegations set forth in the pleadings.

[17]Those facts may be admissible background evidence at trial, however.

[18]The court therefore need not, and does not, address whether the organizations could state a claim based on a suit filed by one of their members.

Defendants also argue that questioning the organizations' members about their affiliations with the Green Party, without more, cannot constitute actionable conduct.[19]  Relying on *Johnson v. University of Wisconsin–Eau Claire*, 70 F.3d 469, 482 (7th Cir. 1995), defendants contend that SMG and CG must also demonstrate that defendants would not have taken the allegedly retaliatory action "but for" the constitutionally protected conduct.  In an attempt to establish that SMG and CG cannot make a "but for" showing, defendants assert that their questioning of applicants was necessary and appropriate because, at a minimum, each LEPC must include representatives from certain designated groups, and thus, in order to adequately fill those categories, the Illinois SERC must ask each applicant to state their affiliation.

This argument is improper at this stage of the proceedings: defendants wrongfully equate what plaintiffs ultimately must *prove* to prevail on their claims with what they must *plead* to state a claim.  *Johnson*, the case on which defendants rest their entire argument, was decided on a motion for summary judgment, not a motion to dismiss.  SMG and CG adequately plead that they engaged in protected speech, that defendants retaliated against them as a result, and that they were damaged.  That is all that is necessary at the pleading stage.  Further, although EPCRA requires representatives of certain designated groups to be appointed to each LEPC, 42 U.S.C. § 11001(c),[20] nothing in the statute suggests that the political affiliation of the representatives is

---

[19]That is not the only retaliatory conduct alleged: SMG and CG allege that Trepanier was removed from the Cook County LEPC because the organizations filed a Notice of Intent to Sue, and SMG alleges that defendants refused to appoint Mulvey-Tatoris to the Cook County LEPC because of her political affiliation.

[20]The groups and organizations required to be represented are: "elected State and local officials; law enforcement, civil defense, firefighting, first aid, health, local environmental, hospital, and transportation personnel; broadcast and print media; community groups; and owners and operators of facilities subject to the requirements of this subchapter." 42 U.S.C.

relevant. Defendants are free to raise the argument that their questioning was appropriate later in the proceedings, but the court hopes they recognize that asking an applicant to disclose her political affiliation is categorically different than asking if she is a doctor, firefighter, or local official.

**Conclusion**

As explained above, defendants' motion to dismiss is granted in part and denied in part.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED:  May 20, 2003

---

§ 11001(c).