IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LIONEL TREPANIER, KURT LESLIE, SHEILA MULVEY-TATORIS, THE SOUTH METRO GREENS, and THE CHICAGO GREENS/GREEN PARTY USA,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL CHAMNESS, individually, and JULIE GENTILE, individually, and officially as Chief Legal Counsel and Manager, Hazardous Materials Compliance & Enforcement Office of the Illinois Emergency Management Agency, and WILLIAM C. BURKE, individually and officially as Director of the Illinois Emergency Management Agency and Chair of the State Emergency Response Commission,<br><br>Defendants. | No. 00 C 2393<br><br>Judge Joan B. Gottschall<br><br>Magistrate Judge Maria Valdez |

## MEMORANDUM OPINION AND ORDER

Defendants in this instant matter invoke privilege on a limited number of documents sought in discovery. In support of their claims of privilege, defendants submitted a privilege log on June 22, 2005. Review of the log led this Court to conclude that the defendants had neither complied with *Allendale Mutual Insurance, Co. v. Bull Data Systems*, 145 F.R.D. 84, 88 (N.D. Ill. 1992), nor carried their applicable burdens. *See, e.g., United States v. Lawless,* 709 F.2d 485, 487 (7th Cir. 1983) (citing *United States v. First State Bank,* 691 F.2d 332 (7th Cir. 1982)) (placing burden on party seeking to invoke attorney-client privilege as one where they must establish all essential elements "on a question-by-question or document-by-document basis");

*Caremark, Inc. v. Affiliated Computer Servs., Inc.*, 195 F.R.D. 610, 613-14 (N.D. Ill. 2000) (citing 8 Wright, Miller & Marcus, *Federal Practice and Procedure* § 2024 (2d ed. 1994)) (outlining a three-part test a party must carry to seek shelter under the work product doctrine).

This Court did, however, allow defendants another bite at the apple and on August 29, 2005, defendants re-executed their privilege log in support of two privilege claims: (1) attorney-client privilege; and (2) the work product doctrine. On September 16, 2005, plaintiffs responded. What follows below are the Court's rulings as to each document submitted *in camera*.

## **DISCUSSION**

### A. *Attorney-Client Privilege*

The purpose of the attorney-client privilege is "to encourage full and frank communication between attorneys and their clients." *Upjohn v. United States,* 449 U.S. 382, 389 (1981) (citation omitted). The Seventh Circuit has construed the scope of this privilege to be narrow, "[a]s it is in derogation of the search for truth." *In re Walsh,* 623 F.2d 489, 493 (7th Cir.) (citing *United States v. Nixon,* 418 U.S. 683, 710 (1974)), *cert. denied,* 449 U.S. 994 (1980). As such, the established elements of this narrow privilege, according to the Seventh Circuit, are as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Radiant Burners, Inc. v. Am. Gas Ass'n,* 320 F.2d 314, 319 (7th Cir.) (en banc) (adopting Wigmore's formulation), *cert. denied,* 375 U.S. 929 (1963).

As this privilege is narrow, there are parameters that guide the determination as to which communications between attorneys and clients are covered.[1] With regard to client-to-attorney communications, the privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *IBJ Whitehall Bank & Trust Co. v. Cory & Assocs., Inc.*, No. 97 C 5827, 1999 WL 617842, at *2 (N.D. Ill. Aug. 12, 1999) (internal quotations omitted) (citing *In re Walsh*, 623 F.2d at 494). Nor are all attorney-to-client communications automatically privileged. Courts recognize attorney-to-client communications as privileged under two circumstances: (1) "if they constitute legal advice;" or (2) "tend directly or indirectly to reveal the substance of a client confidence." *United States v. Defazio*, 899 F.2d 626, 635 (7th Cir. 1990) (citations omitted). *See also Harper-Wyman Co. v. Connecticut General Life Insurance Co.*, No. 86 C 9595, 1991 WL 62510, at *3 (N.D. Ill. Apr. 17, 1991).

## B. *Work Product Doctrine*

The work product doctrine, announced in *Hickman v. Taylor*, 329 U.S. 495 (1947), and codified as Rule 26(b)(3) of the Federal Rules of Civil Procedure, protects from disclosure otherwise discoverable documents. The doctrine shields documents and tangible things "prepared in anticipation of litigation or for trial by and for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) . . .." Fed.R.Civ.Pro. 26(b)(3). The protection exits because "it is essential that

---

[1] This jurisdiction has found that attorney-client privilege is "unquestionably . . . applicable to the relationship between Government attorneys and administrative personnel." *Green v. IRS*, 556 F. Supp. 79, 85 (N.D. Ind. 1982) (citation omitted), *aff'd*, 734 F.2d 18 (7th Cir. 1984). *See also* Restatement (Third) of Law Governing Lawyers § 74 (2000) ("[T]he attorney-client privilege extends to a communication of a governmental organization . . ..").

3

a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947).

A party seeking the protection of the work product doctrine must make a showing, consistent with Rule 26(b)(3), that the materials in question are: (1) documents and tangible things; (2) prepared in anticipation of litigation or trial; and (3) by or for a party or by or for a party's representative. *Caremark, Inc.*, 195 F.R.D at 613-14. To rebut, the party seeking disclosure of the materials in question must show: (1) substantial need; and (2) inability to obtain the substantial equivalent of the information without undue hardship. *Id.* at 614 (citation omitted). However, even if the party opposing privilege is successful in this showing, attorney opinion work product is still shielded as Rule 26(b)(3) affords heightened protection to a lawyer's mental processes. *Id.*

### C. *Waiver*

Both privileges, attorney-client and work product, can be waived. Waiver for each is triggered by disclosure of the communication/document that is inconsistent with the purpose underlying the respective privilege. With regard to attorney-client privilege, voluntary disclosure by the client, inconsistent with the confidential relationship waives the protection. *Wsol v. Fiduciary Mgmt. Assocs., Inc.*, No. 99 C 1719, 1999 WL 1129100, at *6 (N.D. Ill. Dec. 7, 1999) (citation omitted). As to work product, waiver occurs only if the disclosure to a third party "is inconsistent with the maintenance of secrecy from the disclosing party's adversary." *Trustmark Ins. Co. v. General & Cologne Life Re of Am.*, No. 00 C 1926, 2000 WL 1898518, at *4 (N.D. Ill. Dec. 20, 2000) (citations omitted). However, sharing work product with another party that has a

"common interest" is not inconsistent with the adversarial system, *IBJ Whitehall Bank,* 1999 WL 617842, at *4 (citations omitted), so long as the information is maintained in secrecy against the opponent. *Bramlette v. Hyundai Motor Co.,* No. 91 C 3635, 1993 WL 338980, at *3 (N.D. Ill. Sept. 1, 1993) (citation omitted).

### D. *Application of Privileges to Privilege Log Entries*

Several of the defendants' privilege log entries contain more than a single document. To minimize confusion, this Court will only address each individual document within a log entry under a unique, but related, identifier if necessary.

While unable to disclose the specific facts contained in each document, the Court finds that Items Nos. 1.a, 2, and 8 are completely shielded from discovery under both privileges, Items Nos. 6 and 12 are covered in their entirety by the attorney-client privilege, and Items Nos. 3, 4, 5, 7.b, 9, 10, 11, 13, 14, and 15 deserving of the full protection of the work product doctrine. The remaining documents – Items Nos. 1.b and 7.a – are to be disclosed by defendants to plaintiffs as detailed below.

*Privilege Log Entry 1* contains two items: (1) a memorandum (Item No. 1.a); and (2) case law (Item No. 1.b). For each item, defendants invoke both privileges. This Court considers the memorandum and attachments to the memorandum independently as inspection of the documents reveals that they are not related.

*Item No. 1.a:* The memorandum from Julie Gentile (Ms. Gentile or defendant Gentile), then-chief legal counsel for the Illinois Emergency Management Agency (IEMA), to Mark

Novak (Mr. Novak) is marked "Confidential and Privileged Communication" and discusses strategy in relation to then-forthcoming filings by plaintiffs. Plaintiffs raise no objection to the defendants' assertions of these privileges, (Pls. Resp. to Defs. Priv. Log ¶ 1), and the Court finds Item No. 1.a protected by the attorney-client and work product privileges.

*Item No. 1.b:* Attached to the memorandum of Item. No. 1.a are Westlaw versions of case law. They contain no handwritten markings. Moreover, these cases do not appear to relate to Item No. 1.a. By their nature, reported decisions are intended to be neither confidential communications nor the work products of an attorney. Accordingly, the attached case law could not be covered under either privilege defendants invoke.

*Privilege Log Entry 2* is a February 19, 2003 email communication from Ms. Gentile to Deborah Simpson (Ms. Simpson), an assistant attorney general, sent after the commencement of litigation in this case, discussing legal strategy. Defendants assert both privileges and dual roles for Ms. Gentile in connection to privilege log entry 2. As to work product, defendants point to Ms. Gentile's role as attorney for IEMA. They also argue that Ms. Gentile adopted the role of agent for IEMA (client) with regard to their attorney-client privilege claim. On alternative bases, this Court finds both privileges applicable.

In connection to log entry 2, plaintiffs challenge defendants' characterization of Ms. Gentile as an attorney for IEMA. Specifically, plaintiffs draw the Court's attention to defendant Gentile's answers and objections to plaintiffs' first set of interrogatories, in which she states that her last day at the agency was November 26, 2002. (Pls. Resp. to Defs. Priv. Log at Exh. A ¶

20.)[2] Accordingly, it is clear to the Court that Ms. Gentile left her IEMA attorney post in late-November 2002. However, this fact is not fatal to finding for defendants' privilege claims.

At the time the subject of log entry 2 was authored, Ms. Gentile remained a licensed attorney, albeit not with the state agency. As a matter of law, attorneys facing a common litigation opponent, such as Ms. Gentile and Ms. Simpson, may exchange communications and work product without waiving privilege. *Schachar v. Am. Acad. of Ophalmology, Inc.* 106 F.R.D. 187, 191 (N.D. Ill. 1985) (citing *United States v. McPartlin,* 595 F.2d 1321, 1336 (7th Cir.), *cert. denied,* 444 U.S. 833 (1979)). Alternatively, even assuming that Ms. Gentile authored Item No. 2 as a non-attorney, the work product doctrine nonetheless attaches when a document is prepared in anticipation of trial, as is the case here, by or for either a party, which Ms. Gentile is, or a party's representative. *See In re Air Crash Disaster at Sioux City, Iowa,* 135 F.R.D. 515, 520 (N.D. Ill. 1990) ("Rule 26 clearly protects party, and not just attorney, preparation . . . .").

Moreover, under attorney-client privilege, Ms. Gentile's status as a named defendant and then-client of the Illinois attorney general's office allows her recorded communications to her attorney(s) in furtherance of her legal representation to be privileged. A client-to-attorney communication, as Ms. Gentile's to the government attorneys in this email, is privileged if "necessary to obtain informed legal advice." *IBJ Whitehall Bank,* 1999 WL 617842, at *2. The Court's review of the email reveals it contains multiple requests for legal advice tied to the instant matter. As such, this Court recognizes both privileges and rejects plaintiffs' objection for

---

[2]Plaintiffs also challenge the application of the attorney work product privilege in connection to log entries 3-5, 9, and 14. (Pls. Resp. to Defs. Priv. Log ¶¶ 2, 4.) They similarly assert that no attorney-client privilege exists between Ms. Gentile and attorneys representing IEMA in their objections to log entries 3, 9, and 11. (*Id.* ¶ 3.) Both objections are premised on the fact that Ms. Gentile no longer worked for IEMA after November 2002. For brevity's sake, the discussion of Plaintiffs' objections to log entry 2 will also apply to Plaintiffs' objections on this ground to log entries 3-5, 9, 11, and 14.

log entry 2 as well their objections based on Ms. Gentile's departure date under log entries 3-5, 9, 11, and 14.

***Privilege Log Entry 3*** is a memorandum between agency attorneys, from Ms. Gentile to Jeanne Heaton (Ms. Heaton), IEMA attorney, dated June 2, 2003. The memorandum is marked "Confidential and Privileged Communication Prepared in Anticipation of Pending Litigation." Defendants assert only the work product privilege. Review of Item No. 3 leads this Court to conclude the memorandum to be opinion work product. Plaintiffs object to the application of attorney-client privilege to this item, (Pls. Resp. to Defs. Priv. Log ¶ 3), but because defendants do not assert attorney-client privilege, plaintiffs' objection is baseless.

***Privilege Log Entry 4*** is an April 2, 2003 email from Ms. Gentile to Dave Smith (Mr. Smith), IEMA employee, and Ms. Heaton with an attached document. Defendants assert that the attachment is Ms. Gentile's notes detailing a conversation with a Joan Silke (Ms. Silke), an attorney, regarding plaintiff Kurt Leslie (Mr. Leslie or plaintiff Leslie). Defendants invoke both privileges as to the email and attachment. Plaintiffs offer three responses: (1) Ms. Gentile's late-November 2002 departure from her IEMA attorney post negated the basis for both privileges, (Pls. Resp. to Def. Priv. Log ¶¶ 2, 4); (2) distribution to Mr. Smith, a non-attorney agency employee, waived both privileges, (*Id.* ¶ 4); and (3) attorney-client privilege could not cover Ms. Silke as she was not a licensed attorney in Illinois, (*Id.* ¶ 4, Exh. B).

This Court's review reveals that the email contains Ms. Gentile's mental impressions in response to the evolving litigation. It also reveals that the attachment contains Ms. Gentile's

notes from a conversation with Ms. Silke, whom plaintiffs note is listed on the defense witness list, (*Id.* ¶ 4), regarding the instant litigation. As such, the email is opinion work product and the attached notes are fact work product. *Caremark*, 195 F.R.D. at 613-14.

Plaintiffs argue that the work product doctrine was waived when Ms. Gentile disclosed the communication to a third party, Mr. Smith. (Pls. Resp. to Defs. Priv. Log ¶ 4.) However, waiver is not proper in this instance as inclusion of Mr. Smith, an employee of IEMA, is not inconsistent with the adversarial system, the standard for waiver. *See, e.g., IBJ Whitehall Bank*, 1999 WL 617842, at *4. As such, the work product doctrine shields the email and attachment. Accordingly, this Court need not address defendants' asserted attorney-client privilege and plaintiffs' remaining varied responses.

***Privilege Log Entry 5*** is comprised of several documents: (1) three emails, all dated March 20, 2003, from Ms. Gentile to Mr. Smith and Ms. Heaton; (2) three versions of an attached letter regarding the possible disbanding of the Cook County South Local Emergency Planning Committee (LEPC); and (3) a stand-alone letter, which appears to be another draft version of the letter. As to each, defendants invoke both privileges.

The work product doctrine covers documents prepared in anticipation of litigation by a party's representative, Ms. Heaton as agency attorney and counsel for director of IEMA, or the party herself, in this case Ms. Gentile. *See, e.g., Caremark*, 195 F.R.D. at 613-14. Moreover, the distribution to a third party, Mr. Smith, does not waive the protection as his inclusion does not strike this Court as inconsistent with the adversarial system. *See, e.g., IBJ Whitehall Bank*, 1999 WL 617842, at *4. Accordingly, the documents included in log entry 5 are at the very least

9

covered by the work product doctrine. In so finding, the Court need not address defendants' other privilege claim.

***Privilege Log Entry 6*** is comprised of an email, dated March 19, 2003, from Mr. Smith to Ms. Heaton and Michael Chamness, former deputy director of IEMA and named party to this action, regarding the possible disbanding of an LEPC. Defendants assert dual privileges. Below the March 19th exchange is a March 18, 2003 email from Ms. Heaton to Mr. Smith and Ms. Gentile. Plaintiffs respond that the inclusion of an attorney in the distribution chain was disingenuous, improperly serving to shield discoverable evidence. (Pls. Resp. to Defs. Priv. Log ¶ 6.) Plaintiffs fail to support this bald assertion.

Review of these email exchanges leads this Court to conclude that the agency employees, attorney and non-attorney alike, and named defendants to this action were included to carry out legal advice from the attorney general's office. At the time in question, named defendants and the agency's interests were represented by the Illinois attorney general. Privilege for attorney-to-client communications can be had one of two ways: (1) the communication constitutes legal advice; or (2) the communication tends "directly or indirectly to reveal the substance of a client confidence." *Defazio,* 899 F.2d at 635. This Court concludes that the email conversations from March 18th and 19th do contain restatements of legal advice and if released they would reveal the substance of client confidence. As such, Item No. 6 is covered by the attorney-client privilege. Reaching such a conclusion, this Court need not address the work product argument proffered by defendants.

***Privilege Log Entry 7*** contains two items for which defendants invoke work product protection. The first of the pair is a letter from Mr. Leslie, then-chair of an LEPC, to Ms. Gentile, then-agency counsel (Item No. 7.a). The second is an attached draft letter dated August 12, 2002 from Ms. Gentile, as IEMA attorney, to Mr. Leslie, as LEPC chair (Item No. 7.b). Both the letter and attached draft contain handwritten attorney notes, which defendants assert is Ms. Gentile's writing. The handwritings record her impressions and opinions in connection to ongoing litigation. Under *Scurto v. Commonwealth Edison Co.,* No. 97 C 7508, 1999 WL 35311, at *2 (N.D. Ill. Jan. 11, 1999) (citations omitted), opinion work product protection is close to absolute. Thus, this Court finds the written notes to be privileged.

Plaintiffs assert that Item No. 7.a was authored by Mr. Leslie, a named plaintiff, thereby negating any basis for the defense to claim privilege. (Pls. Resp. to Defs. Priv. Log ¶ 6.) The Court agrees. As to Item No. 7.a, the defendants are ordered to redact all handwritten notes and to disclose the redacted document to plaintiffs. Item No. 7.b, however, remains shielded from discovery.

***Privilege Log Entry 8*** covers two documents and defendants assert both privileges. The first is a June 14, 2000 letter, from Ms. Gentile, then-IEMA attorney and representative, to Mary Nagel, former assistant attorney general, discussing the instant lawsuit. The other document is a four-page attachment, authored by Ms. Gentile, again as IEMA attorney and agent, to Mr. Novak, assistant counsel to the Governor, and dated November 12, 1999. The attachment discusses the likelihood of the commencement of a civil action against the state.

11

Plaintiffs concede privilege as to both items, (Pls. Resp. to Defs. Priv. Log. ¶ 1), and a review of the documents leads this Court to conclude that both documents are opinion work product and eligible for coverage under the attorney-client privilege.

***Privilege Log Entry 9*** is a June 14, 2003 letter from Ms. Gentile to Ms. Heaton discussing responses to the pending lawsuit. Defendants assert work product protection. The court having previously rejected Plaintiffs' objections based on Ms. Gentile's departure date, concludes that the letter is a communication between defendant Gentile, a named party and former counsel to the agency, to her successor as counsel to the agency discussing legal proceedings. The Court concludes that Item No. 9 is opinion work product and it remains outside the reach of discovery.

***Privilege Log Entry 10*** is an email containing two prior links in an email chain. The first two email links are dated November 25, 2002 and are communications between Ms. Simpson, with the attorney general's office, and Ms. Gentile, then-attorney for IEMA. They discussed legal strategy in connection to pending litigation. The final link, dated the same day, is a communication from Ms. Gentile to Anne Dorman (Ms. Dorman), an agent for IEMA, and Ms. Heaton, IEMA attorney.

Defendants assert both privileges. In response, plaintiffs contend waiver as third parties were included in the distribution, (Pls. Resp. to Defs. Priv. Log ¶ 9), and the "interests of justice" compel disclosure of Item No. 10 as it may shed light as to the current location of "significant portions of IEMA/SERC EPCRA LEPC documents [that] cannot be found . . . ." (*Id.*).

Legal strategies related to the instant case are contained throughout the volley of the emails making Item No. 10 work product. Moreover, Ms. Gentile is still covered by the privilege in her status as a party to the litigation and inclusion as to the third parties such as Ms. Heaton and Ms. Dorman, agents for IEMA, does not seem inconsistent with the adversarial system, the standard for waiver. This Court having found the existence of a work product privilege, need not address attorney-client privilege.

Finally, plaintiffs seek disclosure in the "interests of justice." The end that plaintiffs seek – locating a misplaced box of agency documents – is unlikely to be furthered by disclosure of the email. Based on the *in camera* review, the Court concludes that Item No. 10 makes no specific or remote mention as to boxes, their location, or other exit details relating to Ms. Gentile's final days with IEMA.

***Privilege Log Entry 11*** is a thirteen-page email containing three email volleys and the text of a draft letter incorporated into the oldest communication. The email exchanges, dated April 7, 2004, are communications between Laura Stolpman (Ms. Stolpman), an IEMA attorney, to Ms. Gentile, Kevin McClain, with IEMA, and Pam Reid, also with IEMA, discussing legal strategy. Defendants argue that work product protection applies to the whole of Item No. 11. In response, plaintiffs put forth an argument against attorney-client privilege, (Pls. Resp. to Def. Priv. Log ¶ 10), even though defendants do not raise it.

As the email subject matter is tied to the instant case and the individuals contributing to the email volley are a named defendant and a party's attorney, the work product doctrine applies. Moreover, inclusion of third-party agency personnel in the distribution of the communication

13

does not constitute waiver as long as it is consistent with the adversarial system, which this Court concludes it was. Thus, Item No. 11 is sheltered from discovery.

***Privilege Log Entries 12 and 13*** are not opposed by plaintiffs. (Pls. Resp. to Defs. Priv. Log ¶ 1.) The Court accordingly finds that Item No. 12 is protected by attorney-client privilege and Item No. 13 is covered by work product.

***Privilege Log Entry 14*** is a February 19, 2003 email from Ms. Gentile to Ms. Simpson discussing legal strategy in connection to the instant action. Defendants invoke the protection of both privileges. Plaintiffs respond that Ms. Gentile's departure from IEMA negates the basis for supporting either privilege. (Pls. Resp. to Defs. Priv. Log ¶ 2.) Under *Caremark*, parties to an action, such as defendant Gentile, can author documents in anticipation of litigation and be covered by the work product doctrine. Recognizing work product protection for Item No. 14, this Court will not address defendants' attorney-client privilege claim.

***Privilege Log Entry 15*** is a three-page email containing the text of three email volleys circulated on March 17, 2004 between Ms. Stolpman and Ms. Simpson discussing legal strategy in connection to plaintiffs' lawsuit. Defendants assert both privileges, which plaintiffs do not contest. (Pls. Resp. to Defs. Priv. Log ¶ 1.) The Court finds that the documents are protected from discovery under the work product privilege. Reaching this result, this Court will not address defendants' attorney-client claim.

## CONCLUSION

The Court finds that Items Nos. 1.a, 2, and 8 off plaintiffs' privilege log are protected under both privileges, Items Nos. 6 and 12 are covered by the attorney-client privilege, and Items Nos. 3, 4, 5, 7.b, 9, 10, 11, 13, 14, and 15 are shielded under the work product doctrine. As Item No. 7.a is partially covered by work product, the Court orders disclosure of Item No. 7.a to plaintiffs after redaction of all handwritten notes, as articulated above, within 7 days of this order. Similarly, this Court finds that Items No. 1.b to not be privileged. Accordingly, Item No. 1.b must also be shared with plaintiffs within 7 days of this order.

**SO ORDERED.**                                **ENTERED:**

Dated: *October 12, 2005*

*Maria Valdez* (signature)

**HON. MARIA VALDEZ**
**United States Magistrate Judge.**